UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF MISSOURI
DIVISION

Clear Form

Byron E. Blake Jr

*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

**v.**

Jacob Cherry AKA 1090 Jake

*(Write the full name of each defendant. The caption must include the names of all of the parties. Fed. R. Civ. P. 10(a). Merely listing one party and writing "et al." is insufficient. Attach additional sheets if necessary.)*

**Complaint for a Civil Case**

Case No.
*(to be assigned by Clerk of District Court)*

Plaintiff requests trial by jury:
☑ Yes ☐ No

**CIVIL COMPLAINT**

*NOTICE:*

*Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date, the full name of a person known to be a minor, or a complete financial account number. A filing may include only: the last four digits of a social security number, the year of an individual's birth, a minor's initials, and the last four digits of a financial account number.*

*Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.*

*In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed without prepaying fees or costs.*

# I. The Parties to This Complaint

## A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Byron E. Blake Jr |
| Street Address | 1303 Fox Chase Dr |
| City and County | St. Charles, St. Charles |
| State and Zip Code | Missouri, 63301 |
| Telephone Number | 773-913-5737 |
| E-mail Address | OfficialByronBlake@gmail.com |

## B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known). Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Jacob Cherry |
| Job or Title | |
| Street Address | 8406 N Chevalier Ave Apartment P3 |
| City and County | Tampa, Hillsborough |
| State and Zip Code | Florida, 33604 |
| Telephone Number | |
| E-mail Address | 1090Jake@gmail.com |

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant. If you are suing for violation of your civil rights, you must state whether you are suing each defendant in an official capacity, individual capacity, or both.)*

## II. Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only three types of cases can be heard in federal court. Provide the information for this case. *(Include all information that applies to your case)*

### A. Federal question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

### B. Suit against the Federal Government, a federal official, or federal agency

List the federal officials or federal agencies involved, if any.

### C. Diversity of Citizenship

These are cases in which a citizen of one State sues a citizen of another State or nation, and the amount at stake is more than $75,000. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

1. The Plaintiff(s)

The plaintiff, *(name)* Byron E. Blake Jr, is a citizen of the State of *(name)* Missouri.

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2. The Defendant(s)

If the defendant is an individual

The defendant, *(name)* Jacob Cherry, is a citizen of the State of *(name)* Florida. *Or* is a citizen of *(foreign nation)* ______________.

If the defendant is a corporation

The defendant, *(name)* ______________. is incorporated under the laws of the State of *(name)* ______________, and has its principal place of business in the State of *(name)* ______________ *Or* is incorporated under the laws of the State of *(foreign nation)* ______________, and has its principal place of business in *(name)* ______________.

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3. The Amount in Controversy

The amount in controversy----the amount the plaintiff(s) claims the defendant(s) owes or the amount at stake----is more than $75,000, not counting interest and costs of court, because *(explain)*:

The defendant is requesting $10,000,000.00 or an amount to be determined at trial, but in excess of $75,000.00

## III. Statement of Claim

Type, or neatly print, a short and plain statement of the **FACTS** that support your claim(s). For every defendant you have named in this complaint, you must state what he or she personally did to harm you. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Do not make legal arguments, or cite court cases or statutes. You may attach additional pages if necessary.

Your statement of claim must include all of the following information:

1. What happened to you?
2. When did it happen?
3. Where did it happen?
4. What injuries did you suffer?
5. What did each defendant personally do, or fail to do, to harm you?

See attached document.

## IV. Relief

State briefly and precisely what damages or other relief you want from the Court. Do not make legal arguments.

See attached document

Do you claim the wrongs alleged in your complaint are continuing to occur now?

Yes ☑ No ☐

Do you claim actual damages for the acts alleged in your complaint?

Yes ☑ No ☐

Do you claim punitive monetary damages?

Yes ☑ No ☐

If you indicated that you claim actual damages or punitive monetary damages, state the amounts claimed and the reasons you claim you are entitled to recover these damages.

See attached document

## V. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this 16 day of July, 20 26.

Signature of Plaintiff(s) Byron E Blake Jr

______________________________

**COMPLAINT FOR DAMAGES**

Plaintiff Byron Blake, proceeding *pro se*, brings this action for damages against Defendant Jacob Cherry, and alleges as follows:

## I. PARTIES

1. Plaintiff Byron Blake is an individual citizen and resident of the State of Missouri.
2. Defendant Jacob Cherry is, upon information and belief, an individual citizen and resident of the State of Florida.

## II. JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to **28 U.S.C. § 1332(a)(1)** because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States. [1]
4. Complete diversity of citizenship exists between the parties. [1]
5. Venue is proper in this judicial district pursuant to **28 U.S.C. § 1391(b)** because a substantial part of the events, omissions, and severe reputational and economic harm giving rise to the claims occurred and were suffered within this district.

## III. FACTUAL ALLEGATIONS

6. Defendant Jacob Cherry is a well-known internet personality, commentator, and YouTube creator who operates a public digital platform focused on prison culture, hip-hop news, and criminal justice matters.
7. Defendant initially built his public platform, reputation, and commercial viability by portraying himself as an authentic advocate for prison reform and prisoner rights.
8. After establishing high visibility and what he termed "validity" within the online community, Defendant shifted the primary focus of his platform toward investigating and publicly evaluating the criminal records, court documents, and backgrounds of mainstream musical artists.
9. Defendant publicly launched this investigative content—commonly referred to as "checking paperwork"—with the express, self-stated purpose of auditing whether these public figures adhered to specific "street codes" or cooperation standards.
10. Defendant has repeatedly and publicly maintained that his intent in exposing these records is educational and altruistic, specifically claiming his work ensures that youth are not misled or misguided by the lyrics or personas of hip-hop artists.
11. As Defendant's platform, commercial influence, and public notoriety grew, members of the public, media commentators, and the online community began to question the authenticity of Defendant's own background, his self-professed credentials, and the veracity of his personal narratives.
12. Because Defendant utilized his own personal history and alleged expertise as the sole moral authority to publicly judge and impact the careers of others, the truthfulness of Defendant's background became a matter of intense public controversy and legitimate public interest.
13. In response to this public controversy, an exhaustive, multi-part investigation into Defendant's public records, prior statements, and background was initiated, eventually encompassing over 77 public video segments.

14. The aforementioned investigation and the resulting video content were directly prompted by Defendant's voluntary entry into the public eye, his explicit mission to influence a youth audience, and the widespread public debate surrounding his personal credibility.
15. In direct response to the ongoing investigation and the public scrutiny surrounding his credentials, Defendant published a video addressing Byron Blake.
16. In the aforementioned video, Defendant explicitly acknowledged the investigation and sought to defend his background, refute the findings, and address the public controversy.
17. Defendant's video response further amplified the public discourse, drawing increased viewership and engagement from the public regarding the veracity of his personal narrative and the validity of his platform.

18. The publication of this response video by Defendant confirms that the dispute concerning his background is a matter of ongoing, active public controversy in which both parties have actively engaged before a public audience.
19. On or about June 6, 2026, Defendant published a video response explicitly targeting Plaintiff, titled "Byron Blake Exposed."
20. In the video, Defendant explicitly acknowledged Plaintiff's investigation, stating that Plaintiff —whom he identified as a "39-year-old failed rapper"—had published "77 videos exposing [Defendant] in the last year" at the 0:00 mark.
21. Rather than addressing the public records raised in Plaintiff's investigation, Defendant used the platform to launch a series of severe personal allegations against Plaintiff and Plaintiff's family members at the 0:11 mark.
22. Specifically, Defendant alleged that Plaintiff's father was a federal inmate who "proffered on his codefendants" at 0:11 and was convicted of a severe felony involving a minor at 0:21. Defendant further claimed that Plaintiff's brother had a history of cooperating with law enforcement in a murder investigation at 0:27.
23. Defendant also targeted Plaintiff directly, accusing Plaintiff of having previously committed a violent "home invasion" involving a firearm at 0:37.
24. Defendant concluded the video by explicitly stating his intent to retaliate, noting that he would show the public "what [he] can do with just one" video at 0:00, and stating, "using his logic I'm a cop cuz my great-grandfather was a cop but your daddy a rat your brother a rat... what does that make you" at 0:44.
25. On or about May 22, 2026, Defendant further advanced his public campaign against Plaintiff by participating in an interview published to YouTube by "Nu Age Plug" wherein he leveled additional targeted and highly inflammatory allegations against Plaintiff.
26. During this publication, Defendant explicitly stated to the public audience: *"His dad [profanity] a little boy, what does that make him? What line does he come from? Go look up Byron Blake, his father who's in the Feds for all that cocaine, and go read his prior and what happened with that little boy. You know what's even better than that? Guess who wrote the petition to free Byron Blake's dad? His son Byron Blake. So you want to free your dad, knowing he did that."*
27. Defendant's public assertion that Plaintiff authored the 2017 petition "knowing" the underlying allegations regarding a minor was factually impossible, deliberately misleading, and fabricated to manufacture a false narrative.
28. In truth, Plaintiff authored the support petition in 2017. The records alleging the prior

conduct of Plaintiff's father were sealed and were not unsealed or made publicly accessible until 2021—four years after Plaintiff's petition was submitted.

29. Defendant had full access to the dates on these public records, yet intentionally concealed the timeline from his audience to falsely frame Plaintiff as a willing defender of child exploitation.
30. Further expanding his defamatory campaign, Defendant explicitly used the highly inflammatory word "pedophile" to characterize the allegations, with the express intent to brand Plaintiff before millions of viewers as an active sympathizer and protector of a pedophile.
31. Defendant further fabricated a narrative regarding Plaintiff's criminal history, stating to the public that Plaintiff had committed a violent "home invasion" and "put a gun to a baby's head."
32. Defendant knew this statement was materially false. While an unverified, initial police report contained an allegation, the legal charges against Plaintiff were ultimately reduced to a charge of criminal trespass.
33. Plaintiff was never convicted of a home invasion, was never convicted of any firearm offense, and never possessed or placed a firearm against an infant.
34. Defendant possesses a platform built entirely on his alleged expertise in reading, analyzing, and "checking" court paperwork and criminal histories. Therefore, Defendant knew, or recklessly disregarded, that presenting a dismissed allegation from an initial police report as an absolute factual conviction constitutes a severe and intentional distortion of the truth.
35. Furthermore, Defendant's claim that Plaintiff accused him of "being a cop cuz [his] great-grandfather was a cop" was completely fabricated by Defendant. Plaintiff never made such a statement. Defendant invented this quote solely to manufacture a false justification for launching his retaliatory digital attack against Plaintiff.

## IV. CAUSES OF ACTION

### COUNT I: DEFAMATION Under Florida Common Law

36. Plaintiff realleges and incorporates by reference all geographic, narrative, and factual allegations contained in Paragraphs 1 through 35 as if fully set forth herein.
37. Defendant made false, unprivileged, and highly damaging statements of fact concerning Plaintiff to a massive, public digital audience via YouTube and third-party media interviews.
38. Defendant committed Defamation by explicitly using the word "pedophile" to describe Plaintiff's father, while falsely stating that Plaintiff authored a support petition "knowing he did that."
39. Defendant's statement was factually impossible and deliberately misleading as established by the 2017 to 2021 chronological public record timeline.
40. Defendant further committed Defamation by falsely stating to millions of viewers that Plaintiff committed a violent "home invasion" involving a firearm and "put a gun to a baby's head," when the matter was legally resolved as a criminal trespass without any firearm conviction.
41. Defendant published these assertions with actual malice, knowing they were false, or with a reckless disregard for the truth, causing the complete destruction of Plaintiff's business livelihood, public hatred, and deep emotional trauma. [1, 2]

42. Plaintiff realleges and incorporates by reference all geographic, narrative, and factual allegations contained in Paragraphs 1 through 35 as if fully set forth herein.
43. Defendant gave widespread publicity to false and highly misleading characterizations of Plaintiff's past, including fabricating quotes regarding Defendant's grandfather to justify a retaliatory attack.
44. Defendant's publication placed Plaintiff before the public eye in a false light that would be highly offensive, shocking, and dangerous to a reasonable person.
45. The false light in which Plaintiff was placed—falsely branding him as a violent, armed home-invader who targets infants, and weaponizing the word "pedophile" to falsely frame Plaintiff as a willing defender/victim of and/or participant in child exploitation—is deeply offensive and ungrounded in reality.
46. As a direct and proximate result of Defendant's actions, Plaintiff has suffered severe mental anguish, humiliation, and destruction of his business operations.

47. Plaintiff realleges and incorporates by reference all geographic, narrative, and factual allegations contained in Paragraphs 1 through 35 as if fully set forth herein.
48. Defendant's conduct in launching a public, targeted campaign utilizing unverified police reports, fabricated quotes, and severe allegations against Plaintiff's family members was extreme and outrageous.
49. Defendant acted intentionally and maliciously to destroy Plaintiff's peace of mind, explicitly stating his intent to retaliate by showing the public "what [he] can do with just one" video.
50. No reasonable person in a civilized society should be expected to endure a weaponized, false digital campaign labeling them an armed threat to infants and a defender of a "pedophile."
51. Defendant's extreme actions directly and proximately caused severe emotional distress, panic, and mental anguish to Plaintiff. [1, 2]

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Byron Blake respectfully requests that this Court enter judgment in his favor and against Defendant Jacob Cherry, granting the following relief:

- **Compensatory Damages:** An award of general and special compensatory damages against Defendant in the amount of $5,000,000, or an amount to be determined at trial, for severe emotional distress, mental anguish, professional humiliation, and the destruction of business livelihood.
- Actual Damages: An award of actual damages in the amount of $100,000, or an amount to be determined at trial, for loss wages and lost business ventures,
- **Permanent Injunction**: An order permanently enjoining Defendant, his agents, and anyone acting in concert with him from further publishing, distributing, or maintaining the defamatory, false light, and harmful video content on YouTube or any other digital platform.
- **Content Removal**: An order compelling Defendant to immediately and permanently delete the video titled "Byron Blake Exposed" and all related interview segments targeting Plaintiff from all digital spaces under Defendant's control.

- **Pre- and Post-Judgment Interest**: An award of pre-judgment and post-judgment interest on all sums awarded, as permitted by law.
- **Attorneys' Fees and Costs**: An award covering all reasonable attorneys' fees, expert witness fees, court fees, and litigation costs incurred by Plaintiff in bringing this action.
- **Other Relief**: Any such further and additional relief as this Court deems just, proper, and equitable under the circumstances.

## VI. JURY DEMAND

Plaintiff Byron Blake hereby demands a trial by jury on all issues, claims, and counts so triable in this action.

Dated: July 16, 2026

Respectfully submitted,

Byron Blake, *Plaintiff Pro Se*
1303 Fox Chase Dr
St. Charles, MO 63301
(773) 913-5737
Officialbyronblake@gmail.com